**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CORE CONSTRUCTION SERVICES**
**SOUTHEAST, INC.,**

   **Plaintiff,**

**v.**                Case No: 6:14-cv-1790-Orl-31KRS

**CRUM & FORSTER SPECIALTY**
**INSURANCE COMPANY,**

   **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the motions for summary judgment filed by the Defendant, Crum & Forster Specialty Insurance Company ("Crum & Forster") (Doc. 62), and by the Plaintiff, Core Construction Services Southeast, Inc. ("Core Construction") (Doc. 74), as well as the responses in opposition and replies filed by each party.

**I.**  **Background**

In the late 1990s, Core Construction – then known as "Southern Gulf West Construction" – served as general contractor for the Lakeview at Carlton Lakes (henceforth, the "Lakeview"), a condominium project. In 1996, Core Construction entered into a subcontract with Patnode Roofing, Inc. ("Patnode") to install roofs at the Lakeview. Pursuant to the subcontract, Patnode was required to obtain certain types of insurance and to have Core Construction named as an additional insured. Patnode completed its work on the Lakeview in 1998. (Doc. 75 at 2).

From August 1, 2003 to August 1, 2008, Patnode was insured under a series of one-year commercial general liability policies issued by Crum & Forster. In 2005, Hurricane Wilma came ashore near the Lakeview, and a number of the roofs at the Lakeview were damaged. Empire

Indemnity Insurance Co. (henceforth, "Empire") paid a portion of the losses sustained by the Lakeview at Carlton Lakes Condominium Association, Inc. (the "Association"), then entered into an assignment allowing it to pursue the Association's claims resulting from the roof damage. Empire, as both assignee and subrogee of the Association, sued Core Construction, Patnode and others in state court in 2007, seeking to recover damages allegedly caused by construction defects. Core Construction made several attempts to tender its defense in that case (henceforth, the "Underlying Action") to Crum & Forster, but Crum & Forster refused to defend or indemnify Core Construction.

On November 3, 2014, Core Construction filed the instant suit, alleging that Crum & Forster breached one or more of the CGL policies it issued to Patnode by refusing to defend or indemnify Core Construction as an additional insured.   On August 10, 2015 Core Construction settled the Underlying Action.   By way of the instant motions, both sides seek summary judgment.

## II.    Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56.   Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### III.    Analysis

Crum & Forster argues that it is entitled to summary judgment for two reasons: first, that Core Construction was not an additional insured under any of the policies it issued to Patnode, and second, that the coverage under those CGL policies did not extend to the claims asserted against Core Construction in the Underlying Action. The Court need only address the latter because, even assuming *arguendo* that Core Construction was an additional insured under the CGL policies, Crum & Forster was not obligated to defend or indemnify it in the Underlying Action.

In pertinent part, the CGL policy in effect for Patnode when Hurricane Wilma hit the Lakeview – the 2005 Policy[1] – provides coverage for "property damage" caused by an "occurrence" during the coverage period. (Doc. 1-5 at 10). The 2005 Policy defines "Property damage" as

---

[1] As noted above, Core Construction asserts it is entitled to coverage under (at least) one of the annual policies issued by Crum & Forster to Patnode covering the period August 1, 2003 to August 1, 2008. (Doc. 74 at 3 n. 6). Crum & Forster insists that, as Hurricane Wilma hit the Lakeview on October 24, 2005, the only policy that could conceivably apply would be the CGL policy covering the period from August 1, 2005 to August 1, 2006 (henceforth, the "2005 Policy"). Core Construction does not argue in favor of another policy or assert that any of the other policies Crum & Forster to Patnode differed in any material respect. Accordingly, the Court will limit its analysis to the 2005 Policy.

> Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

(Doc. 1-5 at 24).

Florida law provides that faulty workmanship can constitute an "occurrence" when the work causes "property damage" to the completed project. *United States Fire Insurance Company v. J.S.U.B., Inc.*, 979 So.2d 871, 891 (Fla. 2007). However, the faulty workmanship must result in damage to some other element to cause property damage. The mere inclusion of a defective component, such as a defective window, or the defective installation of a window, does not constitute property damage unless that defective component results in physical injury to some other tangible property. *Auto-Owners Insurance Co.. v. Pozzi Window Co.*, 984 So. 2d 1241, 1248 (Fla. 2008).

Under Florida law, the duty to defend is determined by examining the allegations in the underlying complaint against the insured. *National Union Fire Insurance Company v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977). Crum & Forster asserts, and Core Construction does not dispute, that the last-filed (and therefore operative) pleading in the Underlying Action was the Fourth Amended Complaint.[2] (Doc. 62 at 6-7). A copy of that document is attached to Crum & Forster's motion. (Doc. 62-4).

Crum & Forster argues that the Fourth Amended Complaint did not include any allegations that Patnode's (allegedly faulty) work resulted in "property damage," as that term is defined in the 2005 Policy, because it only asserted that the roofs had been damaged, rather than asserting that

---

[2] In cases where pleadings are amended such that they supersede earlier filings, the amended allegations control the insurer's duty to defend. *Nationwide Mutual Fire Insurance Company v. Advanced Cooling and Heating, Inc.,* 126 So. 3d 385, 387 (Fla. 4th DCA 2013).

the faulty roofs had caused damage to other elements of the Lakeview.  An examination of the language of the Fourth Amended Complaint supports Crum & Forster's position.  In that document, Empire asserted that as a result of various breaches of duty on the part of Core Construction and the other defendants,

> the Plaintiffs[3] have been damaged and have been required to repair and replace the roofs of the condominiums resulting in damages in excess of $2,500,000.00.

(Doc. 62-4 at 27).  The only items explicitly referenced in the Fourth Amended Complaint as requiring repair or replacement are the roofs.  Similarly, the document assigning the Association's claims to Empire – which was attached to the Fourth Amended Complaint – recites  that the Association "believes that the damages and defects *sustained by the roofs* of the 24 buildings at [the Lakeview] caused by negligent and faulty construction exceed $2,684,358.16" (Doc. 62-5 at 66-67) (emphasis added) and limits the claims assigned to "the damages *to the roofs* of the 24 buildings at [the Lakeview]" (Doc. 62-5 at 71) (emphasis added).

Core Construction argues that the damage could not have been limited to just the roofs because "portions of the roofs at the Lakeview were torn off during the hurricane, exposing the interior of the buildings to wind and water damage."  (Doc. 75 at 13).  It also cites to deposition testimony of Gerard Tuzzio, Core Construction's defense counsel in the Underlying Action, and John Wiseman, Core Construction's corporate representative, in which they identify additional damage suffered at the Lakeview because of the hurricane, such as water damage to drywall and flooring (presumably as a result of the failure of the roofs).  (Doc. 75 at 14-15).  However, Core

---

[3] Empire, the only plaintiff in the Underlying Action, referred to itself in the plural in the Fourth Amended Complaint, presumably because it had sued in dual roles as both subrogee and assignee.

Construction cannot point to any portion of the Fourth Amended Complaint in which such allegations were raised.

Turning to the actual language of that document, Core Construction argues that the passage quoted above, in which it is alleged that the Plaintiffs in the Underlying Action "have been damaged *and* have been required to repair and replace the roofs" (Doc. 62-4 at 27) (emphasis added) establishes two categories of damages – one consisting of damages resulting from the Defendants' breaches, and one consisting of the repair and replacement of the roofs. (Doc. 75 at 13). But this is not a fair reading of this language. At most it is an assertion that Empire (the plaintiff in the Underlying Action) was damaged *and* the roofs had to be replaced. It does not allege that the roofs had to be replaced *and* their failure caused damage to other parts of the buildings (or anything along those lines), as needed to assert a claim for property damage and thereby establish a duty to defend under the 2005 Policy.[4]

An insured's duty to defend is distinct from, and broader than, its duty to indemnify. *See, e.g.*, *Keen v. Fla. Sheriff's Self-Insurance Fund*, 962 So.2d 1021, 1024 (Fla. 4th DCA 2007). Because Crum & Forster had no obligation to defend Core Construction under the 2005 Policy, it also has no duty to indemnify it. Accordingly, Crum & Forster is entitled to summary judgment.

In consideration of the foregoing, it is hereby

**ORDERED** that the motion for summary judgment filed by the Defendant, Crum & Forster Specialty Insurance Company (Doc. 62) is **GRANTED**. And it is further

**ORDERED** that the motion for summary judgment filed by the Plaintiff, Core Construction Services Southeast, Inc., is **DENIED**. And it is further

---

[4] Core Construction points to other language within the Fourth Amended Complaint and in documents attached to it that allegedly assert claims for property damage, but the Court finds the language too vague to merit serious discussion.

**ORDERED** that the Motion to Stay and Bifurcate Plaintiff's Claim for Breach of Duty to Indemnify (Doc. 80) is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 7, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party